174 So.2d 306

Morris N. BOULDIN

v.

CITY OF HOMEWOOD et al.

6 Div. 135.

Supreme Court of Alabama.

Feb. 4, 1965.

Rehearing Denied April 15, 1965.

J. M. Breckenridge, John S. Foster and W. W. Conwell, Birmingham, for appellee City of Birmingham.

Griffin & Wilson, Birmingham, for appellant.

HARWOOD, Justice.

The decree in this court was entered below on 2 September 1964. Under the requirements of due and regular appeal processes, the appeal was submitted in this court on 25 November 1964.

Section 188, Title 37, Code of Alabama 1940, provides as follows:

"When two or more municipalities lying contiguous to each other desire to consolidate and operate as one municipality, they may do so in the manner following. If it is the purpose to annex a city or town to another municipality, then each city or town shall express a willingness to such annexation by adopting an ordinance of the council, and the council of the municipality to be annexed shall thereupon call an election to be conducted in the same manner as other municipal elections by officers selected by the council. *The election shall be held not less than thirty days after the passage of the ordinance.* If at the election, conducted under the same sanctions and penalties as general elections, a majority of the qualified electors voting shall vote for annexation upon official ballots furnished for that purpose, then, upon a canvass of the returns, made as in general municipal elections, showing such results, the territory within the corporate limits of such city or town shall become a part of the annexing municipality and may be divided into wards or annexed to wards already established. Upon a presentation to the council of a petition signed by fifty qualified electors of the city or town, or fifty per cent of the qualified electors thereof, whichever is the least, requesting an election to be held to decide whether such city or town shall be annexed to another city or town, it shall not be necessary for the council to pass an ordinance expressing a willingness to be annexed, but the council shall pass the necessary ordinances providing for an election by the qualified electors of the city or town to decide the question." (1947, p. 495, appvd. Oct. 9, 1947.) (Emphasis ours.)

Pursuant to the provisions of the above section, the city of Birmingham adopted an ordinance on 1 May 1964, expressing its willingness and readiness for the consolidation of the cities of Birmingham and Homewood, Alabama, by an annexation of territory of the city of Homewood, Alabama, to the territory of the city of Birmingham.

A copy of this ordinance was forwarded to the Mayor of the city of Homewood. The council of the city of Homewood took no action. However at a meeting of the council of the city of Homewood on 8 June 1964, a petition for an annexation election, signed by more than fifty qualified electors of the city of Homewood was presented to the council with the request that an election be held in the city of Homewood as provided by Section 188, supra.

Thereafter on 6 July 1964, the city council of Homewood adopted an ordinance calling for a municipal election to be held in the city of Homewood on Tuesday, 11 August 1964, on the question of annexing the city of Homewood to the city of Birmingham, under the provisions of said Section 188, supra.

The Homewood ordinance provided that the Mayor and city clerk give at least thirty days notice of said election by posting such

notice in three public places and by publication once a week for three consecutive weeks in the Shades Valley Sun, a newspaper of general circulation in the city of Homewood, Alabama.

Notice of the election to be held on 11 August 1964, was posted in three public places in the city of Homewood, and by advertising in the Shades Valley Sun on July 9, 16, and 23, 1964.

The date upon which said annexation election was called was also the date upon which the city of Homewood was required by law to hold a general election for the election of a Mayor and Board of Aldermen.

Following the election on 11 August 1964, the city council undertook to canvass the returns of the election, and upon the basis of such canvass certified that 2,423 persons voted "Yes" and 2,417 voted "No" on the question of annexing Homewood to Birmingham.

On 17 August 1964, Morris N. Bouldin, a resident of Homewood, Alabama, filed a bill in the Circuit Court of the Tenth Judicial Circuit, praying that the court take jurisdiction of the cause presented by his bill and make the city of Homewood, Alabama, and the city of Birmingham, Alabama, parties respondent and require them to plead, answer or demur, etc.

The bill further prayed that the court issue a temporary injunction or restraining order enjoining the city of Homewood from transferring any of its property or municipal functions to the city of Birmingham, and enjoining the city of Birmingham from taking over, or attempting to take over any of the property or municipal functions of the city of Homewood.

The bill further prayed upon a final hearing that the court render a decree protecting the complainant's property rights by invalidating the special election held in the city of Homewood, Alabama, on 11 August 1964, and further upon a final hearing that the court render a permanent in-

junction enjoining the city of Homewood from transferring any of its property or functions to the city of Birmingham, and permanently enjoining the city of Birmingham from taking over any of the municipal property or municipal functions of the city of Homewood. The complaint further prayed that the special election held by the city of Homewood on 11 August 1964, be set aside and held for naught, or in the alternative that on a final hearing the court will make and enter an order or decree declaring that the majority of the legal votes cast in such election were opposed to the annexing of the city of Homewood by the city of Birmingham.

We will not attempt to set out all of the averments in Bouldin's bill of complaint, but will refer only to those essential to a review of this case.

In paragraph 4 of his complaint Bouldin asserts in detail matters in reference to the calling of the election, the provision for the notice of such election and asserts that said notice was not posted or published in accordance with the provisions of Section 34(22), Title 37, Code of Alabama 1940; that said special election was not legally called and notice thereof was not legally published and that such special election was invalid and void.

In paragraph 9 of his complaint Bouldin alleges that the tax rate on his property in the city of Homewood was $3.35 per hundred and the tax rate in the city of Birmingham was $3.60 per hundred, and that if the annexation of the city of Homewood by the city of Birmingham is perfected, his tax rate will automatically be increased forthwith and he will be damaged thereby.

In paragraph 10 of his complaint Bouldin alleges that the city of Birmingham imposes on its residents a .01¢ sales tax which is not imposed by the city of Homewood, and that on 13 August 1964, the city of Birmingham amended its sales tax ordinance to apply to the residents of any annexed territory, effective on the first of the month subse-

quent to the effective date of any annexation. Complainant avers that he and other residents of Homewood would be damaged by the levying and paying of said sales tax.

The city of Homewood filed its answer and cross bill, and petitioned for a declaration of its rights. In its answer it admitted many of the allegations contained in the complaint, including those allegations pertaining to the giving of notice of said election. Homewood asserts that although there appears to be a conflict between the provisions of Section 34(22), supra, (notice statute), and Section 188, supra, with respect to the notice required of said election, it had attempted to follow what it considered to be the requirements of Section 188, as to giving the notice of said election. It being the conclusion of the city of Homewood that the notice required was thirty days, and in good faith the city of Homewood considered that the provisions of Section 188 were controlling, and that the thirty day notice as given was legally sufficient.

The city of Homewood prayed that pending a final determination of the proceeding that the lower court would issue an order preserving the status quo of the city of Homewood, and its municipal officers.

The city of Homewood further prayed that upon the final hearing of its answer and cross bill that the court would find the existence of a justiciable controversy between the parties and would render its final decree declaring and setting forth the respective rights, duties, and status of the parties, and would determine the validity of the special election held in the city of Homewood on 11 August 1964.

Other relief is prayed for but we do not think it essential in this review to set such prayers forth.

The complaint of Bouldin, and the answer and cross bill of Homewood, coming to be heard upon the applications for temporary injunction contained in such pleadings, the court denied the application for temporary injunction in each respective case.

The court found as to the original bill that:

"Assuming the truth of the averments of material facts well pled, is lacking in sufficient jurisdictional or essential equity to justify the further exercise of jurisdiction by the court, either to proceed with reception of evidentiary matter or to invite or support any interlocutory restraining order or injunction."

In denying the application of cross complainant, city of Homewood, for an interlocutory injunction, the court in its decree wrote:

"Upon consideration, the Court is of the opinion that the aforesaid application is not due to be granted, for probably lack of equitable jurisdiction over the subject matter, and for want of sufficient equity in the cross-bill as amended to invite or support the reliefs sought anterior to final decree, and separately, for insufficiency of the case made to support the reliefs by way of injunction pendente lite, or decretal declarations or provisions assimilable thereto, same being mainly mandatory and affirmative in form or effect."

Appeals in each case have been perfected and by agreement of all parties are to be considered jointly.

In determining whether the court of equity should have exercised jurisdiction in the premises, we are met at the threshold by the provisions of Section 235, Title 17, Code of Alabama 1940.

In parts material to this review, Section 235 provides:

"No jurisdiction exists in or shall be exercised by any judge, court or officer exercising chancery powers to entertain any cause or proceeding for ascertaining the legality, conduct or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by

statute; and any injunction, process, order, or decree from any judge, court or officer in the exercise of chancery powers, whereby the results of any election are sought to be inquired into, questioned, or affected, or whereby any certificate of election is sought to be inquired into or questioned, save as may be specially and specifically enumerated and set down by statute, shall be null and void, and shall not be enforced by any officer or obeyed by any person * * *."

In Coleman v. Town of Eutaw, 157 Ala. 327, 47 So. 703, the bill was to enjoin the issuance of municipal bonds, the election authorizing such issuance having been held.

It was contended that Section 1671 of the Code of 1896 (now Section 235, supra), forbade the exercise of jurisdiction by courts of equity in election contests, and the bill therefore was without equity. The contention was made that the ballots used in such election authorizing the issue and sale of bonds by the town were not in the form prescribed by the constitution.

In holding there was equity in the bill and that Section 1671 did not oust an equity court of jurisdiction under the facts of the case, this court wrote:

"This objection is untenable, for the reason that the attempted assimilation of the method for contesting elections of officers is entirely inappropriate. Beason v. Shaw, 148 Ala. 544, 42 South [611] 661 [18 L.R.A.,N.S., 566]. An additional, and perhaps stronger, reason is here present in the fact that the primary object and equity of the bill is to prevent the misuse of corporate power * * *."

Thus the equity of the bill was rested upon the jurisdiction of equity to prevent the abuse of corporate power and keep municipal corporations within subjection to the law. See Wilkinson v. Henry, 221 Ala. 254, at page 257, 128 So. 362, 70 A.L.R. 712.

In Wakefield v. Town of Carbon Hill, 215 Ala. 22, 108 So. 855, the appellants had filed their bill against the town and its commission, seeking to enjoin the result of an election, that is, a sale of the Water Works and Electric Lighting Plant of the town, according to a resolution previously adopted by the commissioners, for the approval or disapproval of which the election had been ordered.

A demurrer to the bill was sustained on the ground that the equity court had no jurisdiction to ascertain the legality, conduct, or results of the election. In considering this ground the court wrote that Section 549 of the Code of 1923 (now Section 235, supra) relates to the contests of elections to public office only. The court further wrote:

"A survey of the situation discloses the fact that no statutory means of contesting such elections has been provided. In other words, that matter has been left as it was at common law; but, as said by the Supreme Court of the United States: 'Of the right of resident taxpayers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county or the illegal creation of a debt which they in common with other property holders of the county may otherwise be compelled to pay, there is at this day no serious question.' Crampton v. Zabriskie, 101 U.S. 601, 609, 25 L.Ed. 1070.

"The same rule must apply to prevent the illegal disposition of the public property of an incorporated town. Such property is held in trust for the public. Douglass v. City Council of Montgomery, 118 Ala. 599, 24 So. 745, 43 L.R.A. 376. And this court has in several cases approved the interposition of equity to protect the rights of the public, and of the individuals composing the public, in such cases notwithstanding such rights were affected by elections held for the purpose of disposing of them. Coleman v. Town

of Eutaw, 157 Ala. 327, 47 So. 703; Shanks v. Winkler, 210 Ala. 101, 97 So. 142; Dennis v. Prather, 212 Ala. 449, 103 So. 59. We would not, however, be understood as approving the proposition that mere irregularity in the conduct of such an election will suffice to set aside the result. But where fraud or illegality, affecting the result, is charged, we apprehend that property rights will be protected, and the fact that a right or liability arises out of an election, or that the legality of an election is involved, is no objection to the jurisdiction of the equity court. O'Connor v. Evanston High School, 285 Ill. 120, 120 N.E. 518."

█ Where as here, illegality of the election is charged, and the interests of individuals comprising the public are affected, and the rights and property of the city of Homewood are affected, as well as the misuse of corporate power, we are clear to the conclusion that equity did have jurisdiction of the bills.

It is further to be noted that in McAdams v. NeSmith, 252 Ala. 178, 40 So.2d 84, where the purpose of the proceeding was to determine the validity of an election held in the city of Cullman, the judgment appealed from had been entered in a declaratory judgment proceeding filed by McAdams against the city of Cullman and the Mayor and councilmen thereof. No question of the jurisdiction of the lower court to entertain the proceedings was raised.

We now come to consider whether the election held in the city of Homewood on 11 August 1964, was void because of failure to give the notice of such election in compliance with Section 34(22), supra.

█ Section 188, supra, providing the mode of consolidating contiguous muncipalities in no wise provides for notice of any election to be held thereunder. It does provide, "The election shall be held not less than thirty days after the passage of the ordinance." This means that at least thirty days must elapse after the passage of the ordinance before the election can be held. It does not provide that a thirty day notice of the election is all that need be given.

Section 34(22) of Title 37 (pocket parts), Act No. 663, Acts of Alabama, Regular and Special Sessions 1961, Vol. 1, page 827, approved 6 September 1961, provides as follows:

"It shall be the duty of the mayor to give notice of all municipal elections by publishing notice thereof in a newspaper published in the city or town, and if no newspaper is published in such city or town then by posting notices thereof in three public places in the city or town. When the notice is of a regular election such notice shall be published on or before the third Tuesday in June preceding the election. When the notice is of a special election to be held on the second Tuesday in a month such notice shall be published on or before the second Tuesday of the second month preceding the month in which the election will be held except where otherwise provided by law. When the notice is of a special election to be held on the fourth Tuesday of a month such notice shall be published on or before the fourth Tuesday of the second month preceding the month in which the election will be held except where otherwise provided by law."

█ The regular election referred to in Section 34(22), supra, is the election held every four years for the election of the Mayor and councilmen of a municipality. All other elections, other than these regular political elections, must be deemed to be special elections. The notice required for special elections under the provisions of Section 34(22) supra, must be published on the second Tuesday or the fourth Tuesday, of the second month preceding the month in which the election will be held, depending upon whether the election is to be held on the second Tuesday or the fourth Tuesday of a particular month. In other words, two

months notice of the election is required under this Code Section.

Counsel for the city of Birmingham argue that Section 34(22) as to notice, deals only with the cities not having a commission form of government and was not intended to repeal or amend the provisions of Section 188, supra, which applies to all cities regardless of their form of government, and to hold otherwise would destroy the uniformity of the regulation of municipal elections now established by Section 188.

This argument overlooks the fact that Section 34(22) does have a uniform application insofar as cities not having a commission form of government are concerned. It further overlooks that by Act No. 664, Acts of Alabama, Regular and Special Sessions 1961, Vol. 1, page 868, Sections 34(72a) through 34(125), Title 37, Code of Alabama 1940, approved 6 September 1961, being the same date which Act No. 663 was approved, the legislature provided for the regulation of elections in municipalities of 300,000 population or less, having a commission form of government, and in regard to the notice of elections in these municipalities, provisions of Section 34(75) as to the notice of special elections are identical to those in Section 34(22). The city of Birmingham is the only municipality in this state within the population exception of Act No. 664, supra, and since it had the Mayor and council form of government at the time of the present election, there is no municipality in this state without the provisions of either Section 34(22) or Section 34(75) as regards the notices to be given of special or general municipal elections.

It is crystal clear that the legislature in 1961 by Acts No. 663 and 664, supra, intended to spell out in detail the requirements as to the notice to be given for municipal elections. No longer were city officials to be in doubt in these matters.

■ As before stated we find no provision in Section 188 as to the notice to be given of the elections to be held thereunder, unless it be found in the statement that an election under the said Section 188 is to be conducted "Under the same sanctions and penalties as general elections." If the word "sanctions" be accorded its usual meaning in law, then the word "sanctions" is redundant of the word "penalties" and adds nothing not encompassed by the word "penalties," and cannot be deemed to provide for any notice.

■ Sections 34(22) and 34(75) should be construed in pari materia with Section 188, and of course the last expression of the legislature will prevail. City of Birmingham v. Southern Express Co., 164 Ala. 529, 51 So. 159; Fidelity and Deposit Co. of Maryland v. Goodwyn, 231 Ala. 44, 163 So. 341.

■ Special provisions relating to specific subjects control general provisions relating to general subjects, and the general law yields to the special provisions. Herring v. Griffin, 211 Ala. 225, 100 So. 202; Downing v. City of Russellville, 241 Ala. 494, 3 So.2d 34. Where provisions are particularized such special provisions must be understood as exceptions to any general law. Miller v. State ex rel. Peek, 249 Ala. 14, 29 So.2d 411, 172 A.L.R. 1356; Geter v. United States Steel Corp., 264 Ala. 94, 84 So.2d 770.

■ The above principles necessitate that the provision notices in Sections 34(22) and 34(75) be given primacy and full effect in considering whether proper notice was given of any municipal election.

In McAdams v. NeSmith, 252 Ala. 178, 40 So.2d 84, supra, declaratory judgment proceedings were brought to determine the validity of an election held in the city of Cullman for the purposes of voting on a proposed school tax. In the election the proposal to levy such tax had been approved by a popular vote of 608 to 184. Under the law applicable to the notices required to be given for this type of election, notice had to be published in a newspaper published in the municipality once a

week for three successive weeks. The notice was published one time, but did not thereafter appear. The court stated that the question for decision was whether the failure to publish the notice for three successive weeks rendered the election invalid. In answering this question the court wrote:

> "We are of the opinion that the election under review established no result, since there was lack of compliance with the mandatory provision of the statute as to notice. This being a special, and not a general election where the law fixes the time, the requirements as to notice were mandatory and not directory, and a failure to comply therewith was fatal to the validity of the election. Shanks v. Winkler, 210 Ala. 101, 97 So. 142; State ex rel. Jackson v. Town of Boyles, 214 Ala. 538, 108 So. 590."

We think that the doctrine enunciated in McAdams v. NeSmith, supra, and the cases cited therein necessitates the conclusion that the requirement of two months notice was not met by giving a notice of thirty-one days as was done in the present instance, and that palpably under the admitted facts this election was void. This being so, the lower court erred in refusing the temporary injunctions requested by the appellant Bouldin and by the appellant city of Homewood.

The decrees are accordingly reversed and remanded to the trial court for the entry of orders consonant with this opinion.

Reversed and remanded.

Livingston, C. J., and Simpson and Merrill, JJ., concur.

#### On Rehearing

HARWOOD, Justice.

Appellee, City of Birmingham, makes three points on its application for rehearing, (1) that we erred because we prematurely held the election to be void; (2) that we erred in holding that the notice provisions of Act No. 633, approved September 6, 1961, applied; and (3) that we erroneously relied upon the decision in the Bouldin case as the basis for the decision in the Homewood appeal.

The trial court denied relief to both Bouldin and the City of Homewood because of his opinion that there was no equity in Bouldin's bill or Homewood's cross-bill. Each of those sworn pleadings charged that the proper notice had not been given, and Homewood's answer to Bouldin's bill admitted that allegation.

The question of the proper notice was extensively argued in briefs on this appeal and Birmingham admitted in brief—"If the 1961 Act applied, the notice of the annexation election was insufficient; * *" and its brief further conceded that the sixty day notice was not given and that a special election held without the prescribed statutory notice is void in the absence of other affirmative defenses.

The pleadings and the admissions of all the parties showed that the sixty day notice was not given. The election was therefore void so far as disclosed by the pleadings, and thus the bill contained equity. The trial court therefore erred in failing to issue the temporary injunction. It was only fitting and proper that we call to that court's attention that the bill and cross-bill contained equity in this respect and why we thought it did. On the record before us, that is, as disclosed by the pleadings, the election was void and it was our duty to say so because that was the feature which gave equity to the bill and the cross-bill.

As to point (2), we can only say that there was an honest difference of opinion as to whether Act No. 633 applied to the special election. Evidently, the attorneys for Homewood and Birmingham were of the opinion at that time that the Act did not apply, and the trial court concurred in that opinion. It is our opinion that the Act did apply and our reasons are stated in the opinion.

As to point (3), an agreement appearing in the record in the City of Homewood appeal is to the effect that " * * * it is hereby agreed and stipulated that the record on appeal in the aforesaid cause" (Bouldin v. City of Birmingham) "is hereby included in this record by reference as though set forth in full herein, and that the parties hereto and this Homorable Court may advert to and utilize the record on appeal in the aforesaid cause the same as though its contents were set forth in full herein."

Further, it was agreed between the solicitors for all the parties, subject to approval by this court, that the City of Birmingham might combine in a single brief its reply to the separate briefs filed by the appellants Bouldin and City of Homewood. This agreement was approved by this court, and a single brief was filed by the City of Birmingham.

Thus these two appeals were intertwined and plaited in such fashion by agreement of counsel. This unity compelled consideration of both records together and they have been so treated by all parties. We think the course followed was wise. If there be equity in Bouldin's bill, it would be anomalous to hold that the election was void and the City of Homewood continued to exist so far as disclosed by the pleading in that appeal, but that because of alleged insufficiency in Homewood's bill, in its unamended state as presented to us, as argued by counsel for Birmingham, the lower court should be affirmed, and the denial of the temporary injunction approved, thus in effect in this branch of the appeal holding that Homewood had no existence. Equity must mold its decrees to suit the obvious necessities of each situation, and possesses the power to do so.

We have merely held in our original opinion that Bouldin's bill contained equity, and that the temporary injunction should have been granted. The decree was accordingly reversed and remanded to the lower court for orders consonant with our opinion. In the posture of these appeals it was essential that in a determination of whether there was equity in Bouldin's bill, that we reach a conclusion as to whether Section 34(22) of Title 37 (pocket parts), supra, should be applicable to the special election in question.

We did not, in our opinion, pass upon the question of the constitutionality of Section 34(22), supra, nor upon any question of whether Bouldin, or Homewood might be estopped in pursuing their respective courses. These are matters to be determined first by the lower court in a hearing upon the matter.

The City of Birmingham has filed a motion that this rehearing be considered by all of the justices of this court, in that, as Birmingham alleges, we passed upon the ultimate validity of the election without according the City of Birmingham an opportunity to assert its affirmative defenses. In so doing, the motion asserts, we overruled Alabama Law Enforcement Officers, Inc. v. City of Anniston et al., 272 Ala. 319, 131 So.2d 897; Mobile County v. Barnes-Creary Supply Co., 224 Ala. 168, 139 So. 270; Holcomb et al. v. Forsyth, 216 Ala. 486, 113 So. 516.

Other than holding that Section 34(22), supra, applicable to this election, a matter necessitated by manner of the presentation of these appeals, we passed upon no affirmative defenses that Birmingham may see fit to present in the lower court. The motion to have this application for rehearing considered by the full court is denied.

The application for rehearing is likewise due to be overruled.

Application overruled.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.